Members of the Court, this is a case in which the appellant, Mr. Saldivar-Gadea, was denied a fair trial either by individual errors committed by the prosecutor through prosecutorial misconduct or by court's error in admitting evidence. It is either these individual errors or the combination of those errors that led to the conclusion and leads to the inescapable conclusion that this trial was not fair. Essentially, there were three problems with this trial. First, the prosecutor was dealing with a case of circumstantial evidence in which none of the other participants in the alleged smuggling identified Mr. Saldivar-Gadea as a participant. However, he was associated with the vehicle that was carrying illegal aliens. In order to support its case of circumstantial evidence, the prosecutor did two things during opening statement. First, the prosecutor introduced a statement during opening that Mr. Saldivar-Gadea had a prior incident of alien smuggling. That was going to be proven by evidence and had been previously introduced by 404B notice. However, the prosecutor went one step too far. He indicated that the former co-defendant, who was a passenger in the defendant's vehicle that was said to be the lead or guide vehicle in this operation, also had a history of alien smuggling. The second thing that the prosecutor did that was impermissible is during the opening statement, the prosecutor also advised the jury that one of the smugglers who was involved, in fact, the only one who was caught who had a backpack with a spotting scope and other smuggling equipment, was in fact a juvenile. Combined with these errors, the trial court later admitted the 404B evidence over objection. The 404B evidence was evidence that indicated that Mr. Saldivar-Gadea, about four years previous, had been detained in New Mexico by agents there driving a vehicle on the freeway with two Mexican nationals undocumented in the vehicle. The government introduced this evidence in order to show that the defendant had a propensity for smuggling aliens. However, the government's stated reason for introducing this evidence was to try to show that the defendant had knowledge of alien smuggling and therefore knew that there were, in fact, aliens being smuggled in the suburban that his white van was allegedly leaving in a rural area of Arizona near the New Mexico border. Why isn't that a classic? I'm sorry? Isn't that a classic reason for admitting 404B? The defendant says, oh, yes, I had that gun, but I didn't know it was loaded. Well, you had that same gun twice before and were found to have made the same claim that you didn't know it was loaded, and it turned out it was loaded. No one can seriously take your defense when you've – when one finds out the history of this baloney excuse of the past. Isn't this 404B of that same kind of admissible evidence? Only to the extent that the government would offer to show a propensity, as in your example, to have loaded guns. No, it's not. It's showing that a denial of knowledge is unlikely, given your past history. The requirement is that the government show a sufficient logical nexus and connection and, in fact, similarity between the two offenses in order to draw that conclusion. In the King example Your Honor gives, there is a similarity. Obviously, you're dealing with identical situations. In one case, you have a gun. It's loaded. You said it wasn't loaded. And then another case later, you have a gun that's loaded. You say it wasn't loaded. Those are identical situations. If you look at cases like, for example, the cited case of Baca-Hernandez, which is really strikingly similar on its facts to this case, you've got a situation in that case where somebody was previously found to be driving a vehicle load, like Mr. Saldivar-Gadea, just driving a car down the roadway that had illegal individuals in it, and later is alleged to have been in a different role, essentially dropping off a vehicle to be used as a lead or heat vehicle for a smuggling operation. While in Baca-Hernandez the Court found that the prior offense was essentially too old to be considered, the Court also noted that one of the requirements is that you have to show a substantial similarity and noted the differences between the two offenses. So it's not just enough to show that there were two smuggling incidents. It has got to be shown that these smuggling incidents were sufficiently similar, that the defendant would have garnered knowledge. And knowledge is the key here. That's really what the government said they were trying to use this for. And that's what it's not usable for. That the defendant would logically have been able to garner knowledge from the first incident that he would have been able to use in the second incident, such that his denial of knowledge in the second incident would not be plausible. In this case, Mr. Saldivar-Gadea, there's no evidence he had any contact with the suburban or the individuals who were inside it. And, in fact, none of the individuals saw him or ID'd him. The other smugglers didn't mention him. And he said, I didn't know about the suburban. I didn't know there were people in it. And he was never seen with it. One witness testified that the white vehicle that the defendant was ultimately stopped driving, pulled over and waited for the people to get in the suburban, but didn't even necessarily see them get in the suburban. Nobody said he was even in the white vehicle or had a position to see the people get in. And they went on down the road. Nothing about the New Mexico incident, which was not prosecuted, interestingly, and although the government says that the defendant admitted or implies the defendant admitted knowledge in that case, he didn't. He was asked, did you know smuggling illegal people is illegal? He said yes. But he said he didn't know these people in his car in that case were undocumented. So it absolutely adds nothing to the issue of knowledge for the government to introduce that. What it does do is it shows a propensity by this individual, by Mr. Saldivar-Gadea, to commit smuggling offenses. And that's what the government hoped to, really hoped to get at with that. And that's what it left the jury, that's the impression it left the jury with. That should not have been introduced. The real problem in not just that, but in combination with that, the government blurts out an opening statement that the co-defendant, who has been dismissed from the case, has a prior smuggling problem as well. So now you've got the appellant in a trial where the first thing out of the prosecutor's mouth is not only is this guy a smuggler and we're going to prove it, but the guy he's with is a smuggler. But the defense fashioned a curative instruction that was given by the court. So why didn't that cure any prejudice? And I wrote that instruction, went back into a corner on it, and the Court is aware it was certainly over our objection. But we were certainly trying to do our best to salvage the situation. This is sort of a classic situation, Your Honor, where the bell cannot be unrung. Once the jury knows that the co-defendant is a smuggler, it's impossible to get that out of their minds. We assume that jurors follow the instructions that are given and the jurors were expressly instructed to disregard any of that. And we can say that, Your Honor. And, again, despite the fact that we are jurors, we don't discard our common sense. We know that that sort of thing lingers. And, yes, they're supposed to follow the instruction. They're supposed to disregard it. And this was certainly an intentional remark by the government. They tried to defend it in the motions, not as, oops, Your Honor, I didn't mean to say that, but I meant to say that because I wanted to show that the officer had suspicions because when he ran both of these guys, he came up with a background. But then, even if we assume the jury is going to ignore that one, and this is where the cumulative error may very well play in, the government goes on to basically inflame the jury by saying, and one of these smugglers was a juvenile. There's no reason to say that. It was completely irrelevant to the issues in the case. But in a case of circumstantial evidence, it sure doesn't hurt to have a jury know that you've got a smuggler who's involved, who's been, who's a juvenile. Prosecutor was admonished for both remarks after they were objected to. And even after that, the prosecutor, the government, during examination of one of its agents, says, and what was the status of this smuggler that you caught? Again, making, he was going to, he wanted the agent to say, well, he was a juvenile, and then there was an objection interposed and the court sustained it. Again, we expect the jury to follow the instructions, but we can't, we can't expect them to be superhuman. Not only are they instructed, they say, okay, I'll forget about it, but then later the prosecutor comes back to it, forces me to object, and so they impel an interposed objection, and the jury is thinking, well, the status. Yeah, I remember the status. That guy was a juvenile. And then after all that happens, then the prosecutor goes back and gets to introduce this 404B evidence, which shows that the defendant has this propensity to dismiss evidence that was properly admitted according to the district court. But I really don't think you're giving jurors enough credit. I think they're a lot smarter than you give them credit for being. I think they really stick to the admissible evidence when they're asked to deliberate on guilt or innocence. And, you know, they'll say, you know, there just wasn't enough evidence to convict if they are of the view that that's the case. So if we accept your argument every time there is a misstatement by the prosecutor or prosecutorial misconduct, then the conviction should be overturned. Is that your position? No, not at all. You have an incident of prosecutorial misconduct and the mentioning of improper information about a co-defendant here. Then the mentioning of the information about the juvenile. Then bringing it up again during direct testimony. And then what our position is was improperly admitted 404B evidence. Okay. So if we take away the 404B evidence, do you still think the three instances of prosecutorial misconduct, even though there was a curative instruction, is enough to overturn the conviction? Absolutely. Particularly when combined with the later reference to it and drawing the objection during the trial. It was an unfair trial for all of those reasons. All right. You've exceeded your time. We'll give you a minute for rebuttal. Very well. Thank you. We'll hear from the government. Were you trial counsel? No, I was not, Your Honor. They never come when there's prosecutorial misconduct. The attorneys in my office always try to get me to write their briefs, actually, no matter what's going on. They always what? Try to get me to write the briefs no matter what's going on. Oh, okay. Tell me exactly what the 404B evidence as introduced consisted of. Excuse me, Your Honor? What did the 404B evidence consist of? Well, the 404B evidence consisted of the testimony of a border patrol agent who had previously stopped the defendant. The border patrol agent stopped the defendant because he was traveling 25 miles an hour under the speed limit on an end. The border patrol agent saw two individuals in the back kind of crouched down as if attempting to conceal themselves, which the border patrol agent said is consistent with his experience, you know, people concealing themselves because they don't want to get caught. He pulls the defendant over. The defendant says that he's taking these people to Williamsburg, New Mexico. The defendant states that he knows it's illegal to transport illegal aliens, but he does deny knowledge that the he does deny that he knew the aliens were illegal, and it was established that the two people in the back seat were illegal. That's what the 404B evidence was. Okay. So it was introduced for the purpose of showing that he had done something similar before and had similarly denied knowledge. Do I have that understand? Correct. So it was actually submitted to prove so that the jury could infer the defendant's knowledge in this case, which he was, again, denying knowledge. Yes, I understand, but I just want to make sure I understand exactly what the jury was being asked to infer, that he had falsely denied knowledge in the past in a situation comparable in some respects to the present situation. Is that what the purpose was? I would phrase it a little broader, actually, Your Honor. I would phrase it as the jury was being asked to infer that, again, under the preponderance of the evidence standard, they could have concluded he had knowledge the first time, therefore, they concluded he had knowledge the second time. Well, they only could have inferred. Okay. Was there a limiting instruction given at the time this evidence was introduced? I believe there was. Give me one second. I'll check. Actually, I don't have that handy. I'm almost positive there was the standard limiting instruction given during the overall jury instructions, Your Honor. All right. I just don't have that handy. It's right at the tip of my fingers. Sorry. So with the 404b evidence, as far as similarity, when it's being admitted to show knowledge, all the government needs to show is that the prior act makes the existence of the defendant's knowledge more probable than it would be without the evidence. And clearly, this evidence met that standard. And again, since we're dealing with the admissibility of evidence, we're dealing with the abuse of discretion standard, and the district court did not abuse its discretion by admitting this evidence. The government satisfied all of the elements that are needed for the admission of 404b evidence. As far as the prosecutorial misconduct argument, the issue in this case comes down to whether the curative instruction was sufficient to cure the missteps by the prosecutor. So you concede there was misconduct on the part of the prosecutor? I would concede the prosecutor should not have made those statements. I'm not saying it was intentional misconduct or anything, but I will say those statements should not have been made. And in the context of the entire trial, those statements could have been the type that could be cured by instructions. They weren't so inflammatory that a curative instruction could not take care of the situation. Was there any reason consistent with the prosecution's theory of the case as to why there should have been reference to a juvenile? I do not know why that reference was made. I'm reading the transcript as it seems like it was just made as, and we kind of get in the habit of doing this, a shorthand way of identifying people and keeping them separate. Actually, that's the juvenile, that's the U.S. citizen, that's the illegal alien kind of thing. That's all I can offer in a quote on that. There's no real indication in the record what the motivation was for making that statement. But, again, the fact that the prosecutor comments on a juvenile being involved, again, is not the type of statement that can't be cured by an instruction. It's just not, it's simply not that inflammatory, especially in the context of the evidence in this case and what the defendant's argument was. The defendant's argument was he didn't know anything about that other vehicle, basically. The juvenile was in that other vehicle. There was no suggestion that the defendant was responsible for the juvenile being there. So, again, in the context of what was going on in the case, that was a comment that could be cured by an instruction. And as far as the other comment, as Judge Burry noted when he was ruling on the motion, that statement, again, although improper, wasn't unduly prejudicial because the court was admitting the 404B evidence of the defendant himself. And, again, referring to a codependent having contact with the Border Patrol about alien smuggling, again, is not, especially when the defendant's own prior conduct is going to be admitted, is, again, not the type of comment that can't be cured by a curative instruction. And, again, we're under the abuse of discretion standard on this issue, too. So Judge Burry did not abuse his discretion by denying the motion for mistrial or a new trial. Unless the Court has any further questions. No. It appears not. Thank you. Thank you, counsel. One minute for rebuttal. Thank you for your courtesy, court members. I'll be very quick with this. During the prior New Mexico incident, there's these continued assertions that the individuals in the vehicle were trying to conceal themselves in the same manner that the individuals in this case were said to have concealed themselves in the vehicle. That was an assertion. The officer simply saw what he stated was individuals slumped down in the seat late at night in the back of a sedan. It just made no sense that there was any active concealment. It was an assertion. It's really not relevant in this case. What's relevant is whether the argument that knowledge the first time in transporting individuals undocumented in the country that was gained during that incident was something that would help the defendant in this particular incident. These incidents were dissimilar. There is nothing similar about what the defendant did in this case to what he did in the last case. It is irrelevant, and the government should not have been allowed to introduce that. We look at the Mayans case. That's instructive. The juvenile's involvement in this case, not inflammatory, that's certainly not true. You look at something like the U.S. Sentencing Guidelines, Section 3B1.4, you get an enhancement for an involvement of the juvenile and stuff like this. The defendant not responsible for the juvenile, this is a conspiracy case, Your Honors. The defendant is responsible for everything that goes on, and the jury would impute that to him. All right. Thank you, counsel.  Thank you to both counsel. The case that's argued is submitted for decision by the court.
judges: Tashima, Rawlinson, Cjj Rakoff (S. New York), Dj